# Ying Stafford
Attorney at Law
36 Ferry Lane East
Suite 100
Westport, CT 06880

October 24, 2024

**TO BE FILED ECF**
Hon. Edgardo Ramos
Thurgood Marshall
United States Courthouse
40 Foley Square
New York, NY 10007

           Re:    *United States v. William Skinner*
                    09 Cr. 832 (ER)

Dear Judge Ramos:

This letter is submitted to address the government's re-sentencing memorandum filed on October 23, 2024.

    I.    The Government's Resenting Memorandum
          A. Most if Not All of the Government's Arguments in its Resentencing Memorandum Have Been Rejected by the Court of Appeals

As we noted in our resentencing memorandum, the Second Circuit Mandate is very narrow. *See* Mandate Doc. No. 195. It is merely for this Court to clarify a single reference it made at Mr. Skinner's resentencing. The Court of Appeals heard all of the government's arguments in their re-sentencing memorandum and rejected them, as this Court should do as well.

          B. The Government's Representation that Mr. Cardenas was a Non Violent Drug Supplier is Baseless And Must Be Disregarded

The government has repeatedly made the representation to this Court and the Court of Appeals - without any basis in the record - that Efren Cardenas was a non-violent drug dealer

who was not known to be affiliated with a gang[1], had no known history of violence, and was unarmed. To be clear, there is nothing in the discovery and/or the 3500 material that supports those representations by the government. Indeed when defense counsel requested that the government produce the documentation and/or information that is the basis of their representation, they did not provide any. The response by the government was that their representation was not based upon Mr. Cardenas' specific reputation for being a non-violent drug dealer but his lack of criminal history prior to his murder supports their representation. That is fiction. It is not based upon fact, it is based upon a theory that the government would like to be true but is not supported by any evidence in this case and has no place in this sentencing. It is well settled that the Sixth Amendment guarantees that a defendant will suffer no greater punishment upon conviction than that which is authorized under governing law based solely on the facts found by a jury or admitted in a plea. *See Cunningham v. California*, 127 S. Ct. 856, 860 (2007). This fiction that the government is trying to perpetuate that Mr. Cardenas was a nonviolent drug supplier, that was unarmed when he was killed has no basis in fact. The government did not report their theory to the Probation Department and did not offer this theory when asked by the Court at Mr. Skinner's sentencing. Undoubtedly, because it is wholly unreliable and must be disregarded.

What is factual and truthful is that Mr. Cardenas was traveling between New York and Colombia selling large amounts of cocaine at the height of the Colombian drug cartels influence in America from 1970 - 1993. The Drug Enforcement Association ("DEA") reported that during the early 1980s, international drug trafficking organizations began operating on an unprecedented scale.[2] The rise of the Medellin cartel, the influx of cocaine into the U.S., and the violence associated with drug trafficking and drug use complicate the task of law enforcement at all levels. *Id.* Violent crime rates rose dramatically during this period and continued to rise until the early 1990s. Simply put, Mr. Cardenas was a trusted associate of a dangerous drug cartel that ravaged New York City by flooding it with drugs and violence. Moreover, had Mr. Cardenas been arrested in the Southern District of New York and prosecuted for the six kilograms of cocaine he carried in his briefcase, at his arraignment, the government would enjoy a rebuttable presumption under 18 USC 3142 that "no condition or combination of conditions will reasonably assure ... the safety of the community," and the government would certainly be characterizing him as a violent and dangerous individual.

> C. The Government's Continued Assertion that this Court Misperceived the Evidence in This Case is Also Baseless

The government's assertion that it left this Court with the misimpression of the circumstances regarding the murder of Mr. Cardenas presupposes that this Court did not read the

---

[1] Mr. Cardenas was obviously a trusted member of a drug cartel in Colombia, that was his gang affiliation.
[2] https://www.dea.gov/sites/default/files/2021-04/1980-1985_p_49-58.pdf

many filings in this case or the Probation Report and the Government's sentencing memorandum. Despite the fact that this Court specifically stated that it had read the Probation Report and the government's sentencing memorandum. The government was very consistent in its description of the murder of Mr. Cardenas to this Court prior to it's appeal of Mr. Skinner's sentence. The government only ever refered to Mr. Cardenas as a drug supplier who called to deliver cocaine and was ambused and killed. In the many filings and documents before the court and all of the hearings and appearances before this Court, there is nothing written or spoken by the government that could ever leave this Court with such a misimpression.

This prior description by the government of the murder of Mr. Cardenas is in contrast to what the Government would like this Court to adopt prior to Mr. Skinner's re-sentencing - Mr. Cardenas was unarmed and had no known history of violence. Despite the fact that it has no basis in fact or reality, and, by its own admission, has no basis for this narrative other than conjecture and surmise.

### D. The Government's Other Representations in its Resentencing Memorandum

The government in its resentencing memorandum makes several mischaracterizations of the evidence regarding Mr. Skinner. For example, the government asserts that Mr. Skinner was a "core member" of the Bush-Davis Gang. This is belied by the government's own statements at Mr. Merced's sentencing wherein they stated that William was "a relatively low level member" of the drug conspiracy "who did not have other murders or shootings in his criminal history after the murder of Efran Cardenas." *See* Exhibit B, Skinner Resent. Memo, Doc No. 127. This is also consistent with the filings in this case, as well as, the voluminous 3500 material. Any ties that Mr. Skinner had to the Bush-Davis gang are through Mr. Merced. It was Harold Sattan who planned and orchestrated the robbery of Mr. Cardenas. It was Mr. Merced that recruited, planned and help carry out the murder of Mr. Cardenas. William was recruited by Mr. Merced. None of the cooperating witnesses spoke of direct contact with William.

### E. The Government's Argument that Mr. Skinner Escaped Justice is Just Plain Wrong

The Government has repeatedly stated and inferred that Mr. Skinner evaded justice for the murder of Mr. Cardenas because he exercised his rights under the U.S. Constitution. *See* Oral Argument, Second Circuit Court of Appeals, Case Numb. 22 Cr. 1707. He did not escape justice. Mr. Skinner was arrested soon after the murder of Mr. Cardenas. He exercised his right to an attorney. Mr. Skinner's attorney represented him at trial for the murder of Efran Cardenas. While in jail, Mr. Skinner exercised his right to appeal. He was then arrested 30 years later for the same crime.

Mr. Skinner is the only defendant in this case that served time for the murder of Mr. Cardenas prior to sentencing. The government's reference to Richard Bush, Harold Sattan, Kevin Davis and Kevin Flowers is inappropriate and irrelevant to the re-sentencing of Mr. Skinner. The government did not present this evidence at Mr. Skinner's original sentencing. Regardless, each of them were all high level members of the Bush-Davis gang. Each one of them participated in other murders. In the documents that have been provided by the government, it is clear that Mr. Skinner was not known to any of them other than someone who was associated with Luis Merced.

II. The Government's Attempt to Introduce New Evidence on Remand In this Case Should be Disregarded

The government's attempt to introduce evidence of Mr. Skinner's arrest in 1997 and 2002 - that were both dismissed quickly - is an attempt to invite the Court into a *de novo* resentencing. As noted in the Presentence Report, the government conducted a through investigation of Mr. Skinner's criminal history prior to his original sentencing. *See* PSR Justification for Sentence at 25. Additionally this Court at Mr. Skinner's original sentencing specifically inquired about Mr. Skinner's criminal history and noted that it may have been underestimated. *See* Exhibit A at 17-18. As we noted in our re-sentencing memorandum, the mandate makes clear that this is not a de novo re-sentencing which forecloses any attempts to introduce new evidence. It does not matter if as the government stated that these arrests were not listed on Mr. Skinner's rap sheet. The government had the opportunity and incentive to find these arrests and/or debrief their cooperating witnesses regarding Mr. Skinner's criminal history. The government knew of its obligation to present evidence [at the original sentencing] and failed to do so, it may not now enter new evidence on remand. *See United States v. Archer*, 671 F.3d 149, 168-69 (2d Cir. 2011), *see also United States v. Desnoyers*, 708 F.3d 378, 386 (2d Cir. 2013).

In any case, the fact that Mr. Skinner was arrested and the charges dismissed shortly thereafter do not in any way change or diminish Mr. Skinner's incredible self-rehabilitation. After Mr. Skinner was released from jail and moved back to Brooklyn, he did turn his life around. Although Mr. Skinner had his own apartment, he would still take care of his parents and help his other family members that were living at 12 Kingston Avenue. Thus his name was associated with the 12 Kingston Avenue apartment and he would often park his car in that area when visiting family. With regard to the firearm recovered "during a court-authorized search" of his family home, that firearm was connected to his cousin who was a corrections officer at the time. Mr. Skinner had no knowledge of the firearm, was not living in the home at the time and otherwise had no connection to the search of his family apartment. The charges were subsequently dismissed. Regarding the arrest in 2002, those charges were quickly dismissed as well. Mr. Skinner did not shoot anyone. He had been working for Verizon wireless for six years

when the police came to his work and arrested him for a shooting that he had nothing to do with.[3] He was then fired from Verizon Wireless and shortly after that the charges were dismissed. Finally, the government's reference to Mr. Skinner's wife's criminal history is not new to the Court. The defendant alerted the Probation Department to this during its interview.[4]

III.    The Government Would Have this Court Ignore Long Standing Principles of Individual Sentencing and Well Settled Supreme Court Precedent

The Court is well aware that individualized sentencing is one of the foundations of our criminal justice system. This principle cannot be ignored or overlooked. The Sentencing Reform Act vests discretion in the sentencing judge to weigh the factors and purposes relevant to sentencing and to decide upon the sentence that is "sufficient but not greater than necessary" to achieve those ends. § 3553(a). The government, by arguing that this Court impose a sentence based solely on the severity of the crime, forces this Court to give greater weight to a single factor than to all of the other factors and purposes listed in § 3553(a). It is also inconsistent with Congress's overarching command that this Court must impose a sentence that is "sufficient but not greater than necessary." § 3553(a). This command is neither superfluous statutory language nor a simple mandate for leniency. It carries strong historical and moral underpinnings and prohibits punishment that serves no distinct purpose or may otherwise be deemed gratuitous in light of the characteristics of the defendant and the nature of the crime. *See* Brief of Families Against Mandatory Minimums as Amicus Curiae Supporting Petitioner at 5-12, *Rita*, 127 S. Ct. 2456 (No. 06-5754) ("FAMM Brief").

The government is also advocating for this Court to cede it's authority with regard to sentencing. It is well recognized by the Supreme Court, that "[d]istrict courts have an institutional advantage over appellate courts in making these sorts of determinations." *Koon v. United States*, 518 U.S. 81, 98 (1996) (stating that district courts must have the flexibility to resolve questions "involving multifarious, fleeting, special, narrow facts that utterly resist generalization") (internal quotes omitted). Only district courts have direct exposure to the defendant and the opportunity to assess the evidence and testimony as it is presented, in the

---

[3] We would note that the DD5's provided by the government do not appear to be a complete set of the investigation.

[4] Paragraph 54 of the PSR states, "[t]he defendant and his attorney explained that approximately two weeks prior to Skinner's arrest, his wife was arrested pursuant to an investigation into individuals who were essentially fraudulently providing hospital patients' confidential information and providing it to others for pay. At the time of the presentence interview, the defendant's wife's sentencing was pending and there were some concerns that if she were to be sentenced to a term of imprisonment, who would care for their two children. Angela Skinner (nee Melecio) (P6304571) was convicted of Federal Programs Bribery, under Indictment 19 CR 789 (PGG), and on January 5, 2022, in the Southern District of New York, was sentenced to Time Served, followed by 3 years' supervised release."

context of the entire case. *See United States v. Stevenson*, 396 F.3d 538, 543 (4th Cir.) ("[B]ecause trial courts conduct the fact finding process repeatedly and routinely, they develop a facility – indeed an expertise – to which appellate courts should find it wise to defer."), *cert. denied*, 544 U.S. 1067 (2005). There is inherent tension among the statutorily enumerated purposes of punishment, *see United States v. Rita*, 127 S. Ct. at 2464 (noting that "the goals of uniformity and proportionality often conflict") (emphasis in original), and there is no single "right" sentence that a court of appeals should dictate in a given case, *see Koon*, 518 U.S. at 98. Rather, reconciliation of the conflicting statutory purposes and choice of the final sentence are properly left to the sentencing judge, with the court of appeals refereeing the proceedings to ensure that the judgment is not out of rational bounds. *Rita*, 127 S. Ct. at 2464 ("[D]ifferent judges (and others) can differ as to how best to reconcile the disparate ends of punishment.").

IV. The Government's Argument that William's Self Rehabilitation/Post Sentence Rehabilitation is Not Extraordinary Should be Ignored

Post-offense rehabilitation is extraordinary if it is genuine, enduring, and undertaken independent of any threat of criminal sanctions. William's rehabilitation is all of these. William's withdrawal from the conspiracy was voluntary and self-motivated (and occurred long before his arrest in this case). These circumstances are demonstrably "extraordinary," and justify the 73 month sentence originally imposed by this Court. The government continues to assert that it was somehow easy for William to pull himself from the depths of poverty, abuse, drugs and violence as a child and become a man of integrity. That some would disregard it as nothing to be impressed by is just plain ignorant. Presumably, few will ever know what it is like to be born into the circumstances that William was born into and the amount of strength that was needed to climb from where he was to where he is today. This was despite being arrested in 2002 for something he had nothing to do with, he picked himself up again. He didn't resort to drugs or alcohol. He didn't turn back to a life of crime. He continued his life as a law abiding citizen. That is because William has one thing in mind and that is to break the cycle of poverty and abuse for his children and his children's children. What more can we ask of him?

V. Conclusion

For the reasons stated in the letter we respectfully request that this Court sentence William to his original sentence.

Respectfully submitted,
/S/
Ying Stafford
Nicholas Pinto
*Attorneys for William Skinner*